**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

REICH & TANG DEPOSIT SOLUTIONS, LLC and REICH & TANG DEPOSIT NETWORKS, LLC,

Plaintiffs,

v.

ISLAND INTELLECTUAL PROPERTY LLC and DOUBLE ROCK CORPORATION,

Defendants.

C.A. Nos. 16-1085 GMS
16-1086 GMS
16-1087 GMS
16-1088 GMS
16-1089 GMS
16-1090 GMS
16-1091 GMS

**REPLY BRIEF IN FURTHER SUPPORT OF DEFENDANTS' RENEWED MOTION TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER VENUE TO THE SOUTHERN DISTRICT OF NEW YORK**

**ECKERT SEAMANS CHERIN & MELLOTT, LLC**
Gary W. Lipkin (I.D. No. 4044)
Alexandra Rogin (I.D. No. 6197)
222 Delaware Avenue, 7th Floor
Wilmington, DE 19801 (302) 574-7400 glipkin@eckertseamans.com
arogin@eckertseamans.com

*Counsel for Defendants*

*Of Counsel:*
John Dellaportas
John F. Ward
Kristina M. Allen
Kelli D. Ortega
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, NY 10178
(212) 808-5000
jdellaportas@kellydrye.com

Dated: November 21, 2017

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................ 1

STATEMENT OF FACTS ........................................ 3

ARGUMENT ........................................ 5

I. The Complaints Should Be Dismissed Because They Fail To Seek Invalidity of All the Licensed Patents ........................................ 5

II. In The Alternative, These Cases Should Be Transferred To The Southern District of New York ........................................ 7

A. The First Southwest Suit ........................................ 7

B. The Forum Selection Clause ........................................ 8

C. Plaintiffs' Choice of Forum ........................................ 9

D. The Effect of *TC Heartland* ........................................ 10

CONCLUSION ........................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*BASCOM Global Internet Servs. v. AT&T Mobility LLC*,
827 F.3d 1341 (Fed. Cir. 2016)....................3

*Benitec Australia, Ltd. v. Nucleonics, Inc.*,
495 F.3d 1340 (Fed. Cir. 2007)....................5

*In re Braat*,
937 F.2d 589 (Fed. Cir. 1991)....................4

*Commander Oil Corp. v. Advance Food Serv. Equip.*,
991 F.2d 49 (2d Cir. 1993)....................8

*DED Worldwide Healthcare, Inc. v. 3M Innovative Props. Co.*,
2012 U.S. Dist. Lexis 194210 (D. Del. Jan. 6, 2012) ....................9

*Enfish LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016)....................3

*GMAC Commer. Mortg. Corp. v. LaSalle Bank Nat'l Ass'n.*
242 F. Supp.2d 279 (S.D.N.Y. 2002)....................8

*Intelligent Discovery Mgmt., LLC v. Omnivere Holding Co., LLC*,
2016 U.S. Dist. Lexis 92048 (D. Del. July 15, 2016)....................10

*Lear, Inc. v. Adkins*,
395 U.S. 653, 89 S. Ct. 1902, 23 L. Ed. 2d 610 (1969)....................5, 6, 9

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007)....................6

*Papst Licensing GmbH & Co. KG v. Lattice Semiconductor Corp.*,
126 F. Supp.3d 430, 445 (D. Del. 2015)....................10

*Pharmanet, Inc. v. DataSci, LLC*,
2009 U.S. Dist. Lexis 11661 (D. N.J. Feb. 17, 2009)....................5

*In re Qualcomm Litig.*,
2017 U.S. Dist. Lexis 185519 (S.D. Cal. Nov. 8, 2017)....................6

*In re Schneller*,
397 F.2d 350 (CCPA 1968) ....................4

*Stewart Org., Inc. v. Ricoh Corp.*,
487 U.S. 22 (1988) (Kennedy, J., concurring)....................................................................9

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
137 S. Ct. 1514 (2017)....................................................................................................2, 10

*Verance Corp. v. Digimarc Corp.*,
2011 U.S. Dist. Lexis 58788 (D. Del. May 26, 2011) ..........................................................5, 6

**Statutes**

28 U.S.C. § 1404(a) ..........................................................................................................1, 2, 7

28 U.S. Code § 1406 ...............................................................................................................2

35 U.S.C. 103.........................................................................................................................4

Defendants[1] respectfully submit this reply memorandum of law in support of their renewed motion: (a) to dismiss these actions for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure or, (b) in the alternative, to transfer these actions to the Southern District of New York pursuant to 28 U.S.C. § 1404(a).

## PRELIMINARY STATEMENT

On June 8, 2017, this Court stayed these actions "pending resolution of three motions filed in a New York state related case." This allowed the New York court to resolve the contractual issues between the parties, as it did a week later. Among the findings of the Court was that "only if all of the Licensed Patents are declared invalid would plaintiffs lose their right to earn-out payments." By their own admission, Plaintiffs are not seeking to declare invalid all of the Licensed Patents *as they exist today*. Rather, they are only seeking to declare invalid all of the Licensed Patents *as they existed in May 2015*. Their problem is that the Patent Office has issued five more Licensed Patents since then, including one just a few weeks ago. *See* Reply Decl. Exh. T. Thus, these actions will have no impact at all on their royalty payments.

Rather than amend their pleadings to seek invalidity of all of the Licensed Patents, Plaintiffs are essentially seeking to relitigate the New York court's findings as to the parties' respective contractual obligations. They would like this Court to declare that the Amended and Restated License Agreement (ALA) was rendered void by Plaintiffs' 2015 purported repudiation, notwithstanding that the New York court expressly found the ALA to still be valid and enforceable. But Plaintiffs' remedy lies with the New York State Appellate Division. Unless and until that finding is reversed on appeal, there is no declaratory judgment jurisdiction here.

---

1 All capitalized terms retain the definitions set forth in Defendants' opening brief. Additional record citations are to the accompanying Reply Declaration of John Dellaportas, dated November 21, 2017 ("Reply Decl."), and to Plaintiffs' Brief ("Pl. Br.").

Equally spurious is Plaintiffs' position that this District is the most convenient forum for these actions. As discussed in Defendants' opening brief, the Complaints falsely allege that both Defendants were incorporated in Delaware; in fact, Double Rock is a New Jersey corporation. Plaintiffs declare this new fact to be "immaterial" (Pl. Br. at 2) but then proceed to cite cases premised on defendants' citizenship being that of the filing forum. That is undisputedly not the case here. What we instead have here are four New York-based companies, all of whose principals are in New York, fighting over contracts that were executed in New York, and patents all of the inventors of which live and/or work in New York. So why are we in Delaware? Only one reason – because the Southern District of New York has previously adjudicated several of these same patents, under the same *Bilski* standard of "abstract ideas" that the U.S. Supreme Court later adopted in *Alice Corp.* In sum, this is all just an exercise in forum-shopping. Given the crush of cases brought to this District by *TC Heartland*, transfer is doubly warranted.

Instead of acknowledging this reality, Plaintiffs put forward a list of straw men. They falsely claim that Defendants' first dismissal and transfer motions were "denied" and therefore the current motion is simply a "rehash." Pl. Br. at 1, 2, 10. In reality, those motions were "terminated as moot" because of the Court-ordered stay in this case. Thus, this renewed motion is the Court's first opportunity to determine these issues. Plaintiffs also try to mislead the Court by twice saying Defendants have "waived" any claim to improper venue under 28 U.S. Code § 1406. Defendants have never claimed that Delaware is an improper forum. Rather, they have only ever claimed that the Southern District of New York is a more convenient forum under 28 U.S.C. § 1404(a). Defendants have made that position clear from the very outset of this case, simultaneous with their initial motion to dismiss, and renew it now. It has never been waived.

Accordingly, as set forth below, these cases should be dismissed for lack of jurisdiction, or otherwise transferred to the Southern District of New York

**STATEMENT OF FACTS**

Defendants set forth a complete statement of the relevant facts in their opening papers, and only wish to briefly address Plaintiffs' commentary on Defendants' patent portfolio. Apparently seeking to prime the pump for an upcoming Section 101 motion, Plaintiffs launch into an irrelevant and untrue diatribe about how, after the original License Agreement between the parties was signed, Defendants went on a patent "spree, obtaining dozens more patents on the same accounting concepts resulting in dozens of terminal disclaimers covering roughly 85 percent of its portfolio." Pl. Br. at 2. In fact, the patent applications were already pending at the time the License Agreement were signed, and were disclosed on Exhibit A thereto (Reply Decl. Exh. W), which is why Plaintiffs insisted that the ALA cover all future patents as well.

Moreover, the 63 Licensed Patents disclose a wide range of discrete and highly complex inventions that remain patentable post-*Alice*. *See, e.g., BASCOM Global Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) (finding patent-eligible invention in software patent based on "non-conventional and non-generic arrangement of known, conventional pieces."). As noted above, many of the Licensed Patents survived basically identical § 101 challenges before S.D.N.Y. District Judge Forrest and/or overcame post-*Alice* § 101 questions raised in the Patent Office. Nor do these 1,350 claims disclose only "minor variations in the bookkeeping techniques used to address the same two banking regulations." Pl. Br. at 6. *Cf. Enfish LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016) ("The 'directed to' inquiry, therefore, cannot simply ask whether the claims involve a patent-ineligible concept, because essentially every routinely patent-eligible claim involving physical products and actions involves a law of nature and/or natural phenomenon — after all, they take place in the physical world."). Rather, the 63 Licensed Patents disclose many highly-novel concepts on, *inter alia*, the following subject matter:

- How to use "affiliated banks" and "unaffiliated banks" (U.S. Patent Nos. 7,519,551, 7,933,821, 8,311,916, 8,612,324);
- How to use aggregated (or omnibus) accounts (U.S. Patent Nos. 7,716,131, 7,509,286, 7,668,772, 8,019,667, 8,583,545, 8,566,200, 8,566,201, 7,672,902, 7,996,308, 7,752,129, 7,672,886, 7,752,107, 7,668,771, 7,680,716, 8,606,676, 8,019,668, 8,239,321, 8,386,382, 8,571,960);
- How to distribute funds among many different deposit institutions including using "affiliated banks" (U.S. Patent Nos. 7,519,551, 7,933,821, 8,311,916, 8,612,324), "unaffiliated banks" (U.S. Patent Nos. 7,519,551, 7,933,821, 8,311,916, 8,612,324), percent allocation (U.S. Patent Nos. 8,386,383, 8,781,931, 8,311,939, 9,430,798, 8,370,236, 8,521,569, 8, 719,062,), sorting accounts by taxpayer id # (U.S. Patent Nos. 8,380,621), adjusting for banks transfers in different time zones (*see* U.S. Patent Nos. 8,458,089), using reciprocal deposits (U.S. Patent Nos. 7,672,901, 7,672,902, 7,996,308, 7,752,107, 7,668,771, 7,680,716, 7,672,901, 8,019,668, 8,239,321, 8,386,382, 8,571,960), using holdback banks (U.S. Patent Nos. 7,672,901, 7,672,902, 7,996,308, 7,752,107, 7,668,771, 7,680,716, 7,672,901, 8,019,668, 8,239,321, 8,386,382, 8,571,960);
- How to handle cash in clearance accounts (U.S. Patent Nos. 8,032,456, 8,260,705, 8,688,577), and arranging for intraday transfers (U.S. Patent Nos. 7,672,901, 7,672,902, 7,996,308, 7,752,107, 7,668,771, 7,680,716, 7,672,901, 8,019,668, 8,239,321, 8,386,382, 8,571,960);
- How to pay out interest mid-statement period (U.S. Patent Nos. 7,996,308, 7,752,107, 7,668,771, 7,680,716, 8,606,676, 7,672,901, 8,019,668, 8,239,321, 8,386,382, 8,571,960); and
- How to model fund deposits (U.S. Patent No. 8,655,689).

Further, contrary to Plaintiffs' suggestion, a terminal disclaimer does not mean that claims are "indistinct." Pl. Br. at 6. Rather, terminal disclaimers simply prevent patentees from extending the patent monopoly for invention disclosures made on a particular date. *See, e.g., In re Braat*, 937 F.2d 589, 592-93 (Fed. Cir. 1991) (noting that *the* "obviousness" analysis for "obviousness-type" double-patenting is "similar to, but not necessarily the same as, that undertaken under 35 U.S.C. 103."). In addition, nonstatutory double-patenting also includes rejections based on the equitable principle against permitting an unjustified timewise extension of patent rights. *See In re Schneller*, 397 F.2d 350, 355 (CCPA 1968). If Plaintiffs truly believed their position, they would return to District Judge Forrest and explain how *Alice Corp.* renders her prior analysis moot. Instead, they are here, seeking a second opinion from Your Honor.

## ARGUMENT

### I. The Complaints Should Be Dismissed Because They Fail To Seek Invalidity of All the Licensed Patents

According to Plaintiffs, "Defendants do not—and cannot—dispute that Reich & Tang's actions challenge the validity of every patent licensed from Defendants when Reich & Tang repudiated the license agreement [in May 2015] …. This establishes jurisdiction under Supreme Court authority and the New York state court's rulings." Pl. Br. at 1 (emphasis added). This lawsuit was not filed in May 2015, however. By the time Plaintiffs got around to filing these suits some 18 months later, two more Licensed Patents had issued. *See* U.S. Patent Nos. 9,374,370, 9,483,762; Dell. Decl. Exhs. ¶¶ M, N. Since then, yet three more Licensed Patents have issued. *See* U.S. Patent Nos. 9,569,773, 9,607,335, 9,811,811; Dell Decl. Exhs. O, P; Reply Decl. Exh. T. Plaintiffs do not seek to invalidate any of these additional five Licensed Patents.

That subject matter jurisdiction may have existed in May 2015 is irrelevant. "The burden is on the party claiming declaratory judgment jurisdiction to establish that such jurisdiction existed at the time the claim for declaratory relief was filed and that it has continued since. … A case or controversy 'must be extant at all stages of review, not merely at the time the complaint was filed.'" *Pharmanet, Inc. v. DataSci, LLC*, 2009 U.S. Dist. Lexis 11661, **10-11 (D. N.J. Feb. 17, 2009) (quoting *Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340, 1345 (Fed. Cir. 2007)). Here, Plaintiffs did not seek to invalidate all Licensed Patents when they filed their complaints, and they are not seeking to invalidate all Licensed Patents now. Dismissal is required.

Plaintiffs also argue that *Lear* somehow creates declaratory judgment jurisdiction where none exists. This was the exact same, fallacious argument rejected in *Verance Corp. v. Digimarc Corp.*, 2011 U.S. Dist. Lexis 58788 (D. Del. May 26, 2011). In that case, "Verance contend[ed] the parties have adverse legal interests because a finding of invalidity would render the License

Agreement void and unenforceable, relying on *Lear, Inc. v. Adkins,* 395 U.S. 653, 89 S. Ct. 1902, 23 L. Ed. 2d 610 (1969)." *Id.* at *18. The District Court disagreed, holding that: "there is no substantial controversy between parties having adverse legal interests. … A declaration of invalidity or non-infringement by this Court, standing alone, would have no effect on Verance's obligations under the License Agreement." *Id.* at *15 (citing *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (emphasis added). That is exactly the situation here.

The District Court for the Southern District of California came to the same result in *In re Qualcomm Litig.,* 2017 U.S. Dist. Lexis 185519 (S.D. Cal. Nov. 8, 2017). In that case, the Court concluded that it was "not persuaded that a declaratory judgment as to only nine patents in a portfolio of thousands would affect this legal relationship. Indeed, whether a declaratory judgment affects the legal relationship between the [parties] is particularly questionable given the limited number of patents at issue in comparison with the larger portfolio of thousands of patents that are licensed under the agreement." *Id.* at *64 (emphasis added). Here, unlike *Qualcomm*, the Court need not even ponder the question of whether invalidation of some, but not all, Licensed Patents would affect the parties' legal relationship. The New York court – to which this Court has deferred on contract matters – has held that it would not. Dell Decl. Exh. R at 18-19.

Plaintiffs also argue that it "disputes whether any of these [five unnamed License] patents would have been licensed even pre-repudiation." Pl. Br. at 8. As set forth in Defendants' opening brief, all of these patents plainly disclose inventions relating to the Business Field; Plaintiffs do not even bother to contest otherwise. Instead, they point only to a single letter relating to a single patent in which counsel cited the wrong section of the ALA (2.3 – which deals with patents "that would not otherwise constitute Licensed Patents"). The mistake was promptly corrected (Dell Decl. Exh. F, pp. 428-429), and in any event the other four Licensed Patents were correctly identified as such from the outset. Jurisdiction is thus unquestionably lacking.

## II. In The Alternative, These Cases Should Be Transferred To The Southern District of New York

In their Complaints (*see* ¶ 68), Plaintiffs assert that venue is proper in this District because, *inter alia*, both Defendants "are organized and existing under the laws of the State of Delaware" and because both "have previously availed themselves of this venue in prior lawsuits." We now know that neither statement is true as to Double Rock, which is a New Jersey corporation (Dell. Decl. ¶ 20, Exh. S) that has never availed itself of this venue in any prior lawsuit. The only "prior lawsuit" Plaintiffs can identify was brought solely by Island IP. *Island Intellectual Property LLC v. First Southwest Company*, Civ. Action No. 1:11-cv-00371-RGA.

### A. The First Southwest Suit

Nevertheless, Plaintiffs now argue that Defendants are doing an "about face" (Pl. Br. at 15) by seeking to transfer this case to the Southern District of New York. This argument is just plain silly. The sole defendant in the 2011 case was First Southwest Company, a Delaware corporation with its principal place of business in Texas. Because First Southwest did not have any offices, employees, or corporate records in New York, Island IP initially believed that Delaware was the correct forum. Case 1:11-cv-00371-RGA, Doc. 25. However, after the Eastern District of Virginia granted a near-identical § 1404(a) motion to transfer (*see* Reply Decl. Exh. U), Island IP stipulated to also transferring the First Southwest case to the Southern District, where Island IP had commenced multiple other related patents suits. *See* Dell. Decl. Exh. J.

Unlike *that* case, where the counterparty's ties with New York were limited at best, here all four parties are based in New York, as are almost all of the documents and witnesses, and virtually every other relevant aspect of this dispute. Further, given that Island ultimately *accepted* the Southern District of New York as the most convenient forum in First Southwest, Defendants' position in this case is consistent, not inconsistent, with its position here.

**B. The Forum Selection Clause**

It is undisputed that the Asset Purchase Agreement (APA) contains an exclusive S.D.N.Y. forum selection clause. Dell Decl. Exh. B at 40-41. Here, the New York court held that: "The ALA was entered into in conjunction with the APA as an integrated transaction." *Id.* Exh. R at 6. Where, as here, two contracts form an integrated agreement, the law is clear that the dispute resolution clause from one document carries over to the other. *See, e.g., Commander Oil Corp. v. Advance Food Serv. Equip.*, 991 F.2d 49, 53 (2d Cir. 1993); *GMAC Commer. Mortg. Corp. v. LaSalle Bank Nat'l Ass'n*. 242 F. Supp.2d 279, 283 (S.D.N.Y. 2002).

Plaintiffs argue that these cases do not apply here because, they argue it would "override" the ALA, which supposedly "provides for disputes in a variety of fora."[2] Pl. Br. at 12. The ALA does no such thing. The ALA has no forum selection clause at all, but rather provides in Section 8.4 that: "This Agreement, the Asset Purchase Agreement executed concurrently herewith, and the Transition Services Agreement constitute the entire agreement between the Parties and their Affiliates with respect to the subject matter hereof." Dell. Decl. Exh. C at 18. The provision that Plaintiffs claim provide for disputes "in a variety of fora" is the ALA definition of "Order," which does not specify any jurisdiction. *Id.* at 4. Nothing is being "overridden."

Plaintiffs also argue that the APA's exclusive jurisdiction clause is "inapplicable" because this declaratory judgment action does not "arise out of" the APA. Pl. Br. at 12. That is incorrect – the APA is Double Rock's only connection to this case, as it is neither a licensor nor a patentee. (Indeed, Section 7.2(b) contains an indemnity of the ALA, rendering this whole case moot. Dell Decl. Exh. B at 34.) Further, and in any event, that would be irrelevant – Section 9.9(a) of the

---

[2] Plaintiffs also fault Defendants for quoting from the "court's summary of the plaintiff's argument" (Pl. Br. at 13) without noting that the Court then went on to *adopt* that argument. *See GMAC, supra.*

APA contains no "arising out of" limitation, but rather provides in the absolute that the parties "consent to be subject to the exclusive jurisdiction of the [S.D.N.Y.]" *Id.* at 40-41.

Lastly, if Plaintiffs are in fact suggesting that patent suits are exempt from forum selection clauses, they would be mistaken. *See, e.g., DED Worldwide Healthcare, Inc. v. 3M Innovative Props. Co.*, 2012 U.S. Dist. Lexis 194210, *3 n.3 (D. Del. Jan. 6, 2012) ("a valid forum selection clause [is] given controlling weight in all but the most exceptional cases") (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 33 (1988) (Kennedy, J., concurring)).

### C. Plaintiffs' Choice of Forum

Plaintiffs also argue that Defendants' were wrong to rely on *In re Link_A_Media Devices Corp.*, 622 F.3d 1221, 1233 (Fed. Cir. 2011), in which the Federal Circuit granted the extraordinary remedy of the petition for writ of mandamus and ordered the transfer of the action to the Northern District of California, where "the district court's fundamental error was making [plaintiff's] choice of forum and the fact of [defendant's] incorporation in Delaware effectively dispositive of the transfer inquiry." According to Plaintiffs, "Courts in this district have noted that cases such as these are distinguishable from the situation before the Federal Circuit in *In re Link_A_Media* because both parties . . . are Delaware corporations." Pl. Br. at 14. Here, Double Rock is not a Delaware corporation, and *In re Link_A_Media* is on all fours with this case.

Plaintiffs also suggest that any burden from having to go forward in Delaware as opposed to New York should be disregarded, because "Defendants, who have been paid over $10 million in royalties under the ALA … have the wherewithal to litigate here." Pl. Br. at 17. In reality, Defendants have not received a single dollar in payments from Plaintiffs since 2014. Meanwhile, discovery in the New York action has revealed that Plaintiffs' five executives used the royalties owed Defendants to instead buy Reich & Tang for themselves, and pay themselves $5.4 million in "bonuses." Reply Decl. Exh. V. Wherewithal is not an issue for Plaintiffs.

**D. The Effect of *TC Heartland***

Lastly, Plaintiffs argue that: "Defendants fail to provide arguments to certain factors, including administrative difficulty in both forums resulting from court congestion and the public policies of both forums, and thus waived those arguments." Pl. Br. at 20. Plaintiffs must have missed it, but Defendants' opening brief contained a discussion of the deluge of patent cases brought to this district in the wake of *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514 (2017), requiring the District to enlist twelve visiting judges. *See* Doc. No. 44 at 2. There is no evidence of any comparable congestion in the Southern District of New York, where the transferred cases would likely be referred as "related" to Judge Forrest, who is one of ten judges for that District's Patent Pilot Program established under Pub. L. No. 111-349, 124 Stat. 3674, to streamline the handling of such cases. Dell. Decl. ¶ 6, Exh. E. This factor strongly favors transfer. *See, e.g., Papst Licensing GmbH & Co. KG v. Lattice Semiconductor Corp.*, 126 F. Supp.3d 430, 445 (D. Del. 2015) (transferring to less congested forum); *Intelligent Discovery Mgmt., LLC v. Omnivere Holding Co., LLC*, 2016 U.S. Dist. Lexis 92048, *14 (D. Del. July 15, 2016) (finding S.D.N.Y. less congested than Delaware even pre-*TC Heartland*).

**CONCLUSION**

Accordingly, Defendants requests that action be dismissed or transferred.

Dated: November 21, 2017

**ECKERT SEAMANS CHERIN & MELLOTT, LLC**

/s/ Gary W. Lipkin
Gary W. Lipkin (I.D. No. 4044)
Alexandra Rogin (I.D. No. 6197)
222 Delaware Avenue, 7th Floor
Wilmington, DE 19801
(302) 574-7400
glipkin@eckertseamans.com
arogin@eckertseamans.com

*Counsel for Defendants*

*Of Counsel:*
John Dellaportas
John F. Ward
Kristina M. Allen
Kelli D. Ortega
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, NY 10178
(212) 808-7800